## ANO v. TURNER.

*(Supreme Court, General Term, Third Department.* May 17, 1888.)

LOGS AND LOGGING—CUTTING LOGS ON STATE LANDS BY MISTAKE—RIGHT TO COMPENSATION FROM EMPLOYER.

Plaintiff agreed to cut logs for defendant on the latter's land, and, without knowing it or intending to do so, cut some of the logs on state land. As soon as he discovered that these logs were on state land, he informed defendant, who directed him to remove them, claiming they were on his land. *Held,* that the contract was not rendered invalid by 1 Rev. St. (Edm.'s Ed.) p. 209, § 74, providing a penalty of $25 for each tree cut and removed from state lands, and that plaintiff could recover for cutting the logs.

Appeal from judgment on report of referee.

Action brought by Francis Ano against Benton Turner to recover compensation for cutting a lot of logs. Trial before a referee, who found for plaintiff, and from the judgment entered thereon defendant appealed.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*G. H. Beckwith,* for appellant. *R. Corbin,* for respondent.

INGALLS, J. This action is brought by the plaintiff to recover of the defendant compensation for cutting and delivering a quantity of logs. There is really upon this appeal but one question involved in the controversy, which is whether the plaintiff was entitled to compensation for cutting and delivering a portion of such logs, which are claimed by the defendant to have been taken by the plaintiff from lands belonging to the state of New York, in violation of section 74, p. 209, 1 Rev. St., (Edm. Ed.) which provides a penalty of $25 for every tree which shall be cut and carried away by any person from such lands. The logs were cut under a written contract entered into between the parties, as follows:

"Memorandum of agreement made and entered into this 26th day of September, 1884, between Francis Ano, of Cold Brook, Clinton county, N. Y., of the first part, and Benton Turner, of the second part, as follows, viz.: The party of the first part agrees to cut, skid, and deliver to the party of the second part, during the coming winter, on the north branch of the Saranac river, below the Goldsmith saw-mill, in a good workman-like manner, three thousand standard of merchantable market spruce and cedar logs; said logs are to be cut on lots 7, 8, and 9, south-east quarter of lot 116, and on 114 acres in lot number 30, township 9, Old Military Tract; the balance of the logs on said lots are to be delivered the following winter. All of said spruce and cedar logs are to be cut 14 feet long, and as small as seven inches at the top end. The dry and dead timber is to be taken clean as far as suitable for market logs. Defective logs are to be measured so as to make them equal to market logs. Said logs are to be measured by the twenty-two inch standard, and, for each and every twenty-two inch standard log delivered, the party of the second part agrees to pay the party of the first part one dollar and sixty cents in cash, on the first of each and every month during the time of the delivery. Said logs are to be measured on skidways as often as once in two weeks. If lumber

roads are cut to said skidways in good workman-like manner, and if skidways are put up in good workman-like manner, and for each and every twenty-two inch standard log piled on said skidways, the party of the second part agrees to advance the party of the first part, on the first of each and every month, sixty cents per standard.   It is further understood this contract is except to eight hundred logs by count in north-east corner of lot 9.

his<br>"FRANCIS  X  ANO.<br>mark.

"Witness: OLIVER SHARMON.                    B. TURNER."

The referee made the following findings of fact, which are incorporated in his report:  *Second.* That the plaintiff, during the said winter, and intending to pursue said contract, cut and drew to the said river below said pond 3,213 and 94-1000 standard logs for the defendant.  *Third.* That a portion of said logs (490 standard) were cut by plaintiff for defendant on part of said lot 30 not belonging to defendant, but to the state of New York.  *Fourth.* The plaintiff did not know at the time he cut those logs on state land that the land belonged to the state.  *Fifth.* That the defendant had, before he made the aforesaid contract with plaintiff, caused the whole of said lot 30 to be marked around, and had directed the plaintiff, in cutting the logs, to keep within the line he had caused to be marked around the lot.  *Sixth.* That while said logs were being cut, or after they were cut, claims were made to the plaintiff to said logs on behalf of the state, of which claims the defendant was informed by plaintiff; that defendant directed plaintiff to draw and deliver said logs to him, the defendant.  *Seventh.* That the defendant, after being notified of the claims on behalf of the state to said logs, acquired the title of the state thereto, and admitted to the plaintiff that he was indebted to him for cutting and delivering the same at the rate of $1.60 per standard.  The evidence in regard to the facts above found is very conflicting, and we conclude that it does not preponderate so decidedly in favor of the defendant as to require a reversal of judgment upon that ground.  It cannot be said, we think, that any fact material to the plaintiff's cause of action is unsupported by competent evidence, and consequently the plaintiff's case before the referee was not unproved.   It was assailed by evidence produced by the defendant, which created a decided conflict upon the material questions of fact involved, and the referee was required to weigh the evidence, and to draw inferences therefrom.  In such a case, the determination of the referee should not be disturbed unless the appellate tribunal can see very clearly that injustice has been done, which we are persuaded is not this case.  *Cheney* v. *Railroad Co.*, 16 Hun, 415.   It seems fairly inferable from the evidence that, when Miller assumed to represent the state, in regard to the cutting of timber upon its lands, on the 25th of January, 1885, the logs in question had been cut by the plaintiff, and the referee has found, in substance, that the defendant, after being notified of the claim on behalf of the state, directed the plaintiff to remove the logs.  It further appears that at some period, which is not particularly stated, the defendant purchased all the right and interest of the state in such logs; nor is it shown what price he paid therefor.  We think the facts justify the assumption that such purchase was not made by the defendant until after the plaintiff had bestowed his labor on the logs, under the contract.  From the defendant's evidence, we learn that he purchased the interest of the state in the logs in question, but through whom he does not state with any degree of certainty, nor does he state the price paid, nor the time of such purchase.  We are therefore not informed whether his purchase of the logs was sufficiently favorable to enable him to retain the price claimed by the plaintiff for cutting and delivering the same.  We, however, infer that such was the case, from the fact that the following statement contains, as we understand it, the price for cutting and delivering such logs:

"PLATTSBURGH, N. Y., April 7, 1885.

"*Francis Ano, in ac. Benton Turner, Dr.*

1884.

| | | | |
|---|---|---|---|
| Nov. 3. To check Merchants' Bank, | - | - | $ 500 00 |
| Dec. 15. To cash, | - | - | 500 00 |
| Dec. 15. To check, | - | - | 100 00 |
| Dec. 29. To cash, | - | - | 100 00 |
| 1885. | | | |
| Jan. 16. To cash, - | - | - | 500 00 |
| Feb. 16. To 3 bbls. flour, at $6.00, | - | - | 18 00 |
| Feb. 17. To 4 bbls. pork, at 18.00, | - | - | 72 00 |
| Feb. 23. To cash, | - | - | 600 00 |
| Feb. 23. To 1 bbl. flour, - | - | - | 6 00 |
| Feb. 26. To 6 bbls. flour, at 6.00, | - | - | 36 00 |
| Mch. 6. To cash, - | - | - | 500 00 |
| Mch. 14. To check, | - | - | 500 00 |
| Mch. 14. To paid John Collins, horse, | - | - | 3 00 |
| Mch. 14. To use of cutter, | - | - | 1 00 |
| Mch. 14. To paid N. Ellenwood, - | - | - | 3 00 |
| Mch. 14. To cash, | - | - | 3 22 |
| Apl. 7. To 2 checks, | - | - | 1,000 00 |
| Apl. 7. To balance, - | - | - | 671 06 |

*Credit.*

1885.

| | | |
|---|---|---|
| Mch. 14. By 2,861 387-1000 st. logs, at 1.60, | | $4,578 88 |
| Mch. 14. By 189 326-1000 st. logs, at 1.60, | | 303 40 |
| Apl. 17. By 133 349-1000 st. logs, at 1.60, | | 231 00 |
| | $5,113 28 | $5,113 28 |

By balance,                                          $  671 06

It appears that all the logs had been cut and delivered previous to the making of such statement by the defendant, and we do not perceive that at that time the defendant questioned the right of the plaintiff to claim compensation for the labor bestowed upon such logs upon the ground that they had been cut upon the land of the state in violation of such statute, or for any other reason. It seems very clear that, when the agreement was made, the plaintiff did not intend to cut logs upon the land of the state of New York, or upon land owned by any person, other than the defendant; and consequently there could not have been any intention upon his part to violate the statute referred to, and no taint attached to the contract. The referee has found that the plaintiff did not know, at the time he cut the logs on the state land, that the same belonged to the state; and we think the evidence justified such finding. It seems, therefore, that at the time the agreement was entered into, and also at the time the logs were cut, that the plaintiff did not intend to cut timber upon the land of the state, or to violate said statute. After the defendant was informed of such cutting, he directed the plaintiff to remove the logs, at the time claiming that they were cut upon his own lands. If the state had any right to proceed against the plaintiff under such statute, and recover the penalty, it did not assume to enforce the same against him. And, in the light of all the facts and circumstances of the case, we fail to perceive upon what ground, legal or equitable, the defendant can be allowed to defeat the claim of the plaintiff for compensation for the labor bestowed under the contract, for cutting and delivering the logs, at the request and by the direction of the defendant. Assuming, as I think we should, under the findings of fact made

by the referee, supported, as they are, by evidence that the plaintiff entered into said contract in good faith, without any intention of trespassing upon the lands of the state, and that he cut the logs without any knowledge that they were upon such lands, and removed the same by the direction of the defendant, who claimed that they had been cut upon his land, we think the case is brought within the principle declared in *Coventry* v. *Barton,* 17 Johns. 142, which was again recognized in *Stone* v. *Hooker,* 9 Cow. 154. The general doctrine contended for by the counsel for the appellant, in his able argument, is doubtless sound, when applied to a proper state of facts, but, we think, fails to reach the case we are considering. It would seem most unreasonable to hold that the plaintiff should be deprived of compensation for labor bestowed under a contract unobjectionable in itself merely because, in executing it, he cut a portion of the logs upon the land of the state not intending to do so, and having no knowledge that he had entered upon such lands. Especially so, when the acts were all performed by the plaintiff under the direction of the defendant. *Bloxsome* v. *Williams,* 3 Barn. & C. 232; *Cannan* v. *Bryce,* 3 Barn. & Ald. 179. In the case last cited, the court remarks: "It will be recollected that I am speaking of a case wherein the means were furnished with a full knowledge of the object to which they were to be applied, and for the express purpose of accomplishing that object." The examination of this case has convinced us that no sufficient ground has been established for a reversal of the judgment, and the same must be affirmed, with costs.